For Plaintiff: John R. Higgins.

For Defendant: Greene, Kennedy & Greene.

---

John C. Kiernan  
    vs           No....67015  
Aaron Weitman  

RESCRIPT  
February 3, 1927  
(Capotosto, J., Below)

Heard on defendant's motion for a new trial after the jury in an action of assumpsit returned a verdict for the plaintiff in the sum of $2285.

In November 1923 the defendant, who owned certain land on Adelaide

Avenue in the City of Providence, entered into a contract with one Arthur N. Grenyer by the terms of which Grenyer was to build a certain dwelling house for a stipulated sum. Grenyer, in turn, made a contract with the present plaintiff for the installation of certain plumbing and fixtures for the sum of $2200. In January 1924, after the defendant had made the first payment to the contractor, Grenyer paid plaintiff only $300 of $800 which was due, and then promised to pay the remaining $500 the following day. The plaintiff in substance claims that he waited until about the middle of January without receiving any more money from Grenyer; that he then went to the defendant's house, told the defendant that he was through with Grenyer, and threatened to place a lien upon defendant's property for the balance due him from Grenyer; that it was then and there agreed between the plaintiff and the defendant that if the plaintiff would not resort to lien proceedings and, further, would agree to do the same work for the same price for the defendant that he had agreed to do in his contract with Grenyer, he (the defendant) would personally pay the plaintiff the sum stipulated in the plaintiff's original contract with Grenyer. The making of any such agreement is denied by the defendant.

The plaintiff seeks to support his claim by the testimony of various witnesses as to certain statements which they said were made by the defendant at various times. Even if we construe these statements most favorably in behalf of the plaintiff, we find them either vague and indefinite or else explainable when considered in the light of some extra work which the plaintiff was admittedly doing for the defendant, and for which the plaintiff received payment.

The wife and son of the defendant, on the other hand, testified for the defendant as to what transpired at the meeting at defendant's house in January, 1924. At some undetermined time and before the house was finished, Grenyer, the real cause of all the trouble between these parties, thought it expedient to go West without making his ultimate destination known to anyone. Mindful of the old saying that actions speak louder than words, the true situation between these parties may be ascertained more definitely by examining what the parties themselves did before and after this meeting of January, 1924.

The plaintiff claims that at the time of the making of this independent contract with the defendant, he honestly believed he had a lien upon the defendant's property by reason of the work which he had done under his contract with Grenyer. The plaintiff had been a journeyman plumber for a great many years and a master plumber, taking sub-contracts, for some indeterminate time. On December 21, 1923, the plaintiff, together with others, at the request of Grenyer, signed a printed form waiving any lien for any work done by him as plumber on the defendant's premises. While this release of lien is deficient in certain formal aspects, its purpose is clear. The plaintiff admits signing it and, as far as the evidence discloses, knew what he was signing when he affixed his signature thereto. At this time he trusted Grenyer and upon his written waiver of any lien the defendant was led to make a certain payment. Under these circumstances can it be reasonably said that a business man really believed he still retained a right which he had personally released for his own benefit? Perhaps this practical master plumber did.

Let us see how the plaintiff's conduct subsequent to the making of the alleged agreement with the defendant squares with his claim that at the time he entered into that agreement he was all through with Gren-

yer and that thereafter he looked for payment to the defendant and no one else. It is established by the evidence that Grenyer and the plaintiff on February 16, 1924, went in the defendant's absence to the defendant's place of business and that Grenyer, in Kiernan's presence, dictated to the defendant's stenographer an order directed to Weitman for the payment of $500. This order (Defendant's Exhibit 1), signed by Grenyer, among other things says: " . . . and I direct and authorize Aaron Weitman in my behalf to pay the said John C. Kiernan the sum of Five Hundred Dollars (500) upon the completion of said house." On February 18, 1924, the plaintiff brings the defendant another and more comprehensive order signed by Grenyer and directed to the defendant (Plaintiff's Exhibit 2), which, after reciting the existence of a plumbing contract between Grenyer and Kiernan and the payment of $300 thereon by Grenyer to Kiernan, reads as follows: "The total amount called for under the said contract is Twenty-Five Hundred Dollars (2500), which after deducting the Three Hundred Dollars (300) mentioned above will leave a balance due the said John C. Kiernan, upon the completion of the said contract, exclusive of any extra work which is to be taken care of by you, as the owner. under another contract, the sum of Twenty-Two Hundred Dollars (2200) and I hereby authorize you to make payment of this amount to the said John C. Kiernan." At the end of this order there was a formal acceptance which was to be signed by the defendant. Weitman, under advice of counsel, refused to accept the order of February 16, and again refused to sign an acceptance of or to recognize in any way binding upon him the order of February 18.

With these facts established this court is forced to the conclusion that at no time did Kiernan abandon the Grenyer contract. Whatever else Grenyer and Kiernan might have hoped to accomplish if these two orders, especially that of February 18, had been accepted by the defendant, Kiernan continued to look to Grenyer as the party primarily liable to him. If the plaintiff had in fact made the independent contract with Weitman in the previous January, and if he was absolutely through with Grenyer at that time, as he now says, the plaintiff in all probability would have had either no writing at all or else a writing which would have reflected in some concrete form the agreement which he now seeks to establish.

The plaintiff's entire course of conduct, as shown in the two instances referred to as well as by others of a minor nature, which it is unnecessary now to mention in detail, is contradictory of and inconsistent with his present claim. The real situation as it appears to the court is that of a sub-contractor, who has been deceived by an unscrupulous builder, seeking to make good his losses from the owner under the claim of an alleged independent agreement.

The plaintiff failed to prove his case by the weight of the credible evidence.

Defendant's motion for a new trial is granted.

For Complainant: Comstock & Canning.

For Respondent: Hinckley, Allen, Tillinghast & Phillips.